1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

GILBERT SALDANA,

CASE NO. 11cv0633-LAB (WMc)

12

Plaintiff,

**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION (DOCKET NUMBER 30);**

13

vs.

14
15

**ORDER GRANTING MOTION TO DISMISS (DOCKET NUMBER 17); AND**

16

T. BOREM, et al.,

**ORDER DENYING MOTION FOR ENTRY OF DEFAULT**

17

Defendants.

18
19      On March 28, 2011, Plaintiff Gilbert Saldaña, a prisoner proceeding *pro se* and *in*

20   *forma pauperis*, filed his complaint bringing a claim under 28 U.S.C. § 1983. Specifically,

21   Saldaña alleges Defendants violated his free exercise rights under the First amendment and

22   the Religious Land Use and Institutionalized Persons Act (RLUIPA), his First Amendment

23   right to freedom of expression, his equal protection rights under the Fourteenth Amendment,

24   and his due process rights under the Fifth and Fourteenth Amendments.

25      Defendants Builteman, Madden, Ochoa, and Hurtado then moved to dismiss all

26   claims against all Defendants. After receiving briefing Judge McCurine issued his report and

27   recommendation (the "R&R"), in which he recommended dismissing some but not all claims,

28   Saldaña filed objections, to which Defendants filed a reply.

1    A district court has jurisdiction to review a Magistrate Judge's report and
2  recommendation on dispositive matters.  Fed. R. Civ. P. 72(b).  "The district judge must
3  determine de novo any part of the magistrate judge's disposition that has been properly
4  objected to."  *Id*.  "A judge of the court may accept, reject, or modify, in whole or in part, the
5  findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The
6  Court reviews de novo those portions of the R&R to which specific written objection is made.
7  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  "The statute
8  makes it clear that the district judge must review the magistrate judge's findings and
9  recommendations de novo if objection is made, but not otherwise."  *Id*.  When no objections
10 are filed, the Court need not review the report and recommendation de novo.  *Wang v.*
11 *Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005).

12   The parties did not object to the factual discussion set forth in the R&R, which the
13 Court therefore **ADOPTS**.  The facts and legal standards are set forth in the R&R, and the
14 Court will not recite them in full here.

15   The dispute concerns a large, partially completed drawing Saldaña had in his cell. The
16 drawing, attached as an exhibit to the complaint,[1] depicts a scene involving three people in
17 Aztec-style costume. One woman lies decapitated with a pool of blood near her neck. The
18 second woman is bare-chested and wears a headdress, sandals, ornaments, and a small
19 loincloth, and is shown kneeling, with one bare breast visible. A powerfully-built man, also
20 clad in a loincloth, sandals and headdress, stands behind her, grasping her hair from behind,
21 and holding a club or sword at waist level. Saldaña maintains this is a religious drawing
22 which he is permitted to possess, under both the California Code of Regulations and
23 RLUIPA. The complaint contains a detailed attempt to explain the myth this drawing depicts,
24 which involves the killing of an earth goddess, and the decapitation of the moon goddess in
25 revenge, by the sun god. (Compl., 10–12.) Saldaña has attached his other drawings, which

26

27      [1] Because the drawing is attached to the complaint, it may be considered when ruling
28 on a motion to dismiss, without converting the motion into a motion for summary judgment.
   *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). A copy of that
   exhibit is attached as an appendix to this order.

1    were not confiscated. Several depict scantily-clothed figures of people or symbols of violence

2    or death (such as skulls or weapons), but only the confiscated drawing depicts actual nudity,

3    violence, or threatened violence.

4    Two prison officers found this drawing in Saldaña's cell. During the same search they

5    also found several examples of what Saldaña admits was contraband pornography. The

6    officers confiscated the contraband pornography and the drawing. The explanation given at

7    the time was that it depicted female frontal nudity, which in fact it does. Saldaña's argument,

8    however, is that it has religious value is therefore not contraband under theFebruary 24,

9    2012 California Code of Regulations. The officers did not confiscate other religious drawings.

10   Saldaña attempted to get his drawing back through the prison grievance process, but

11   was unsuccessful. He argues the officers who searched his cell violated his rights by

12   depriving him of his religious drawing, and also framed him by collating all the materials

13   together instead of keeping them separate and considering the drawing separately from the

14   admitted pornography, but in light of the other religious materials. He argues that because

15   the pornography was kept separately from the drawing, and used only for "entertainment"

16   purposes (Compl., 2), its presence in his cell sheds no light on the nature of the drawing.

17   He also argues the officials who denied his grievance and appeals violated his rights

18   by not allowing him to possess his religious drawing, by considering the confiscated

19   materials together instead of separately as he thinks they should have, and by treating him

20   differently than other prisoners. Other prisoners, he now points out, were permitted to look

21   at a documentary about babies which showed naked infants and bare-chested women, and

22   copies of *National Geographic* which showed several naked or partially-naked people in

23   tribal environments, injured people, and other images he thinks are analogous. His theory

24   is that these officials should have corrected the alleged violation, and that their failure to do

25   so was itself a violation.

26   The R&R recommends dismissing all claims against Defendants Madden, Builteman,

27   and Ochoa—but not Wilkins or Foston—based on their handling of his grievance or appeals.

28   It recommends denying Defendants' motion to dismiss Saldaña's equal protection claim

against Defendant Borem. And it recommends granting Defendants' motion to dismiss Saldaña's due process claim.

**Modifications to the R&R**

The Court generally agrees with the R&R, but finds it has occasionally applied incorrect standards, or incorrectly considered some of the facts to reach the conclusion that some claims could survive.

Although the R&R recommended dismissal of claims against most Defendants, it recommended not dismissing those same claims against Defendants Foston and Wilkins, simply because they have not yet answered and are the subject of a motion for entry of default. But the Court is not free to do this. Under 28 U.S.C. § 1915(e)(2) and 1915A(b), the Court is <u>required</u> to dismiss, *sua sponte*, the complaint of any prisoner or anyone else proceeding *in forma pauperis* to the extent the complaint fails to state a claim. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, as soon as it becomes clear the complaint fails to state a claim against any Defendant, the Court must dismiss those claims regardless of whether the Defendants have answered or appeared. The Court therefore **REJECTS** the R&R's recommendation that the motion to dismiss be denied as to Defendants Wilkins and Foston. Rather, all claims will be dismissed as to these Defendants to the same extent as to other Defendants.

The only claim the R&R found Saldaña had adequately pleaded was his equal protection claim against Defendants Borem and Hurtado. The R&R correctly identifies the elements of an equal protection claim, but its recitation of the facts do not support such a finding. The R&R found that Saldaña had alleged facts showing he was treated differently than others because they were allowed to view movies depicting bare-chested women and receive copies of *National Geographic* magazine that occasionally depicted naked or injured people. The R&R also found Saldaña had successfully alleged discriminatory purpose, because Borem intermingled the pornography and the drawing, without considering its religious significance.

/ / /

- 4 -

Defendant Borem and Hurtado were present during the search of Saldaña's cell. After Hurtado found contraband pornography and Saldaña admitted it was contraband pornography, he tried to persuade Borem on the spot that the drawing was not contraband, but was primarily for religious purposes. But confiscating the drawing along with the admitted pornography doesn't reasonably show or imply Borem had a discriminatory purpose; to the contrary, it suggests they were looking for contraband. The fact that other religious items were not left in the cell and not confiscated underscores this.

The fact that the drawing was kept apart from the admitted contraband has no obvious significance.  A prisoner who wished to disguise contraband would, it stands to reason, take steps to make it look like something else, and prison officers are entitled to consider the possibility. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (taking note of argument that prisoners often use religious activity to cloak illicit and violent conduct, and explaining that prison officials may appropriately question a prisoner's motives even when he asserts they are religious).  Saldaña has pleaded no facts suggesting Hurtado or Borem knew this drawing was not contraband, simply because it was stored with other religious drawings. More importantly, none of Saldaña's allegations suggest Borem intended to discriminate against Saldaña because he was a member of the Nahuatl/Aztec religion.  The allegations make clear the confiscated drawing was only one of six religious drawings Saldaña had in his cell, and the other five were not confiscated or questioned.  (Compl., 1 and n.1.)

Borem also served as the first-level reviewing officer who rejected Saldaña's first appeal.  He alleges that Borem "now claimed the print portrayed conduct which appeared to be forceful, threatening or violent, and depict[ed], displayed, or described bestiality [or] sadomasochism." This allegation doesn't show any discriminatory purpose, because it is consistent with what Borem said when he searched the cell, and because it is demonstrably true that the drawing depicts threatening and violent behavior as well as frontal female nudity. This brings it within the definition of contraband as set forth in 15 Cal. Code Reg. §§ 3006(15)(C)(2) & (5), 3006(17)(A).

Besides failing to allege discriminatory intent, Saldaña has failed to alleged he was treated differently than similarly-situated prisoners. The relevant section of the California Code of Regulations excludes from the definition of contraband material of serious artistic, scientific or religious value <u>when purchased or approved</u> by authorized prison personnel. 15 Cal. Code Reg. § 3006(17)(B)(1), (2). For obvious reasons, it does not authorize inmates to possess unapproved material in secret and come forward with an explanation only later, when caught. Nor does it forbid prison officers to confiscate such materials pending a hearing. The other inmates Saldaña identified all watched a documentary about infants, looked at classical art, or read *National Geographic*, all of which apparently was provided or approved by the appropriate personnel and is permitted by the regulation. They were therefore not similarly-situated.

The constitutionality of these regulations has been upheld as reasonably related to legitimate penological interests. *See Nelson v. Woodford*, 249 Fed.Appx. 529, 530 (9th Cir. 2007) (citing *Mauro v. Arpaio*, 188 F.3d 1054, 1058–63 (9th Cir. 1999) (en banc)) (summarily concluding that 15 Cal. Code Reg. § 3006(c)(15) and (17), forbidding the possession of obscene or sexually explicit material, was constitutional).

Although the R&R did not separately address the RLUIPA claims, the Court notes that Saldaña has not pleaded such a claim. To state a claim under RLUIPA, Saldaña must allege facts showing that Defendants imposed a substantial burden on his religious exercise. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 921 (9th Cir. 2011). Saldaña has not pleaded facts showing that possessing the original of this drawing in his cell is part of his religious exercise, or that depriving him of the original of this one drawing substantially burdened his religious exercise. Saldaña's allegations facts show that he was permitted to possess and view five other images, but that only this particular one was considered contraband.

**Saldaña's Objections**

Saldaña first objects that officials who rejected his grievance and appeals are vicariously liable for violations of his rights, both because they failed in their duty to monitor

subordinates, and because they failed to order the drawing to be returned to him once they learned about it during the appeals process.  If a simple failure to know what subordinates were doing, and to prevent it, would suffice, *respondeat superior* would be enough to establish liability under § 1983. However, it is not. *See Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir. 1993).

The second part of Saldaña's argument is worthy of more serious consideration. If the officials who heard his appeals knew of an ongoing violation, and if they had the authority to put a stop to it but did not, they can be liable. *See, e.g., Herrera v. Hall*, 2010 WL 2791586, slip op. at \*4–\*5 (E.D.Cal., July 14, 2010). But, as explained above, Saldaña's pleadings don't show or suggest they knew this. The fact that he provided a lengthy explanation of the story the drawing depicted does not change the fact that it depicts violence and nudity, and was not previously approved. Defendants are not required to develop expertise in Saldaña's religious practice or beliefs. *See Mayweathers v. Newland*, 314 F.3d 1062, 1069 (9th Cir. 2002) (holding that RLUIPA does not promote excessive entanglement with religion, in part because it does not require prison officials to develop expertise in religious worship).  Nor were they required to accept his arguments and expressions of sincerity. *See Cutter*, 544 U.S. at 725 n.13 (prison officials are permitted to question prisoner's asserted religious motivation).  Although Saldaña repeatedly charges the officials with "refusal to consider" his arguments or explanations, in fact the allegations show they considered Saldaña's arguments and explanations but were unpersuaded. The exhibits attached to the complaint make clear he was permitted to, and did, submit voluminous evidence to the officials.

Saldaña also argues Defendant Hurtado formally abandoned his challenge to Saldaña's equal protection claim, in Hurtado's reply to Saldaña's opposition to the motion to dismiss. The Court has reviewed the reply brief, and disagrees. Apparently Saldaña believes that because the reply brief did not address the equal protection claim, the argument has been abandoned. This is erroneous. Defendants weren't required to file a reply brief at all. Under this District's Civil Local Rules, which Saldaña cites as the source of

this supposed requirement, a reply brief is optional. *See* Civ. Loc. Rule 7.1(e)(e) (setting deadline for filing "any reply memorandum" the movant may choose to file). The fact that they filed a reply that didn't address all Saldaña's arguments does not mean they have conceded the arguments they didn't address are correct. Furthermore, as discussed above, the Court would still be required to dismiss the complaint *sua sponte*, to the extent it fails to state a claim.

Saldaña also objects that he has shown that Hurtado denied him equal protection because Hurtado is part of a group of officials bent on treating practitioners of the Nahuatl/Aztec religion worse than other prisoners. In fact, the complaint merely alleges other prison officials throughout the California Department of Corrections and Rehabilitation confiscate various kinds of materials similar to his drawing.

Finally, Saldaña objects to the R&R's finding that because he had an adequate postdeprivation remedy, confiscation of his drawing violated due process. *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). He argues this applies only to unauthorized confiscations, and that authorized confiscations—which he says this was—require a meaningful hearing immediately. Even assuming an immediate hearing was required, however, the allegations make clear Saldaña got it. During the search of his cell, he admits, he was given an opportunity to explain to Sgt. Borem why he should be allowed to keep his drawing. Sgt. Borem did not accept his explanation and confiscated it. This was then followed by informal and formal appeals. The fact that the hearing and appeals were not resolved as Saldaña wished does not mean his due process rights were violated.

**Conclusion and Order**

The R&R is modified to include the Court's reasoning above. So modified, Saldaña's objections to it are **OVERRULED** and it is **ADOPTED**. The motion to dismiss is **GRANTED**. All claims are **DISMISSED**. The due process claims are **DISMISSED WITH PREJUDICE**. Because it is not clear Saldaña cannot successfully amend his complaint, his remaining claims are **DISMISSED WITHOUT PREJUDICE**.

/ / /

Before the R&R was issued, Saldaña discussed filing an amended complaint. (Docket no. 29.)  If Saldaña wishes to file his amended complaint, he may do so no later than **28 calendar days from the date this order is issued**. His amended complaint must not include any new claims, or claims dismissed with prejudice, and must correct the defects identified in this order and in the R&R.

Because all claims against Defendants Foston and Wilkins have been dismissed, the motion for entry of default against them is **DENIED AS MOOT**. The Court notes, however, that Defendants have correctly pointed out that neither of these Defendants was adequately served with process, because the service papers were sent by certified mail to the wrong address and the return receipt is unsigned.  If Saldaña is able to amend his complaint, the Court will then screen it and, if appropriate, direct the U.S. Marshals to re-attempt service.

**IT IS SO ORDERED**.

DATED:  February 24, 2012

**HONORABLE LARRY ALAN BURNS**
United States District Judge